**In re Estate of Simmons**

100

C.P. of Berks County, no. 6-85-935.

*Victoria Gallen Schutt* and *Mark R. Sprow,* for petitioners.

*Eugene C. LaManna,* for respondent.

SCHMEHL, P.W., *J.,* January 8, 2004—This matter is before the court on the petition of two of the decedent's three sons for the enforcement of a family settlement agreement. The scrivener of the decedent's will drafted the agreement shortly after the decedent's death because of his concern about ambiguities in the will he had earlier drafted. As the result of the scrivener's taking this initiative, the decedent's wife and three sons executed the agreement to clarify the decedent's intent regarding the distribution of his assets. The agreement is clear.

The decedent, Joseph L. Simmons, died on July 3, 1985, leaving a will dated March 24, 1982. Letters testamentary were granted on July 17, 1985, to the decedent's wife, Mildred M. Simmons, and his son, J. David Simmons, the respondent herein. They retained C. Wilson Austin, Esquire, the decedent's attorney for many years and the scrivener of the decedent's will, as counsel for the estate. According to the terms of the decedent's will, the respondent was also to serve as the trustee of a testamentary marital deduction trust for the benefit of the decedent's wife.

Apparently, on the belief that there was an ambiguity in the decedent's will regarding the identity and disposition of certain assets, Attorney Austin prepared a family settlement agreement, which was signed by all interested parties, the decedent's wife, and the decedent's three sons. The agreement provided for the disposition of certain assets pertaining to the decedent's business, Joseph L. Simmons Inc., of which the decedent owned 4,499 out of 5,000 shares of stock.

The corporation owned and managed a building situated at 136 South 5th Street, Reading, Pennsylvania and operated a business known as the Beltone Hearing Aid Service from the first floor of that building. The remain-

der of the building contained residential apartments. In accordance with the decedent's will, the decedent's shares of stock in the corporation were distributed to the respondent as trustee of the marital deduction trust.

The family settlement agreement provides in pertinent part as follows:

"Whereas, it was the intent of the testator that the Beltone Hearing Aid Service business was to become the absolute property of J. David Simmons upon the termination of the marital deduction trust set forth in his last will and testament and that the apartment house building was to be part of his residuary estate; and,

"Whereas, such wording was not clear under his last will and testament, now, therefore,

"It Is Agreed between the surviving spouse and the three surviving sons, as follows:

"(1) Upon the death of Mildred M. Simmons, and the termination of the unlimited marital deduction trust set forth in the said last will and testament of the said Joseph L. Simmons, deceased, the ownership of Joseph L. Simmons Inc., in and to the Beltone Hearing Aid Service shall pass in fee to J. David Simmons.

"(2) The building situated at 136 South 5th Street, Reading, Pennsylvania, shall become part of said decedent's residuary estate, and upon the death of Mildred M. Simmons, each of decedent's three sons shall become one-third owner of the said building only, as title and ownership of the hearing aid business, without any reference to any stock ownership, shall pass by this family settlement agreement as aforesaid to J. David Simmons."

The agreement clearly states that the building situated at 136 South 5th Street shall pass to the decedent's three sons, in equal shares, upon the death of the decedent's wife. Decedent's wife died on May 10, 2002.

The petitioners have made demand upon the respondent to terminate the trust and distribute their shares of the building to them in accordance with the family settlement agreement. The respondent has failed to distribute the trust assets in accordance with the family settlement agreement. The respondent has also failed to act upon any of the petitioners' settlement offers. Consequently, the petitioners filed their petition to enforce the agreement. The respondent did not bother to appear for the hearing, though his counsel did.

Prior to the hearing on this matter, the building's value was appraised at $63,000. As part of his appraisal, the appraiser reported that the building has a gross potential income of $25,260 per year, an effective gross income of $22,987 per year, total operating expenses of $12,819, and a net operating income of $10,168. Despite the terms of the family settlement agreement providing for the building's becoming a part of the decedent's residuary estate and for the building's ownership passing to the brothers in equal shares upon their mother's death, the building continues to be titled in the name of the corporation.

"Family agreements or settlements are always favored in the law and when fair are valid and will be upheld whenever possible. . . . Speaking with more particularity, family agreements construing wills are, in the absence of fraud, binding . . . , even though based on an

error of law." *Fry v. Stetson,* 370 Pa. 132, 135, 87 A.2d 305, 307 (1952). (citations omitted)

As the majority shareholder of the corporation, the estate had, by several different means, the ability to effect the transfer of the building from the corporation to the estate for distribution in accordance with paragraph number two of the family settlement agreement. The fiduciaries of the estate, both of whom were signatories to the family settlement agreement, had an obligation to accomplish this result. Furthermore, the respondent (again noted to be a signatory to the family settlement agreement), as trustee of the marital deduction trust, accepted the distribution of the estate's shares in the corporation with the full understanding that the building was not to remain an asset of the corporation.

It was undisputed that the respondent runs the corporation as a "one-man operation." Whether in his role as trustee or in his individual capacity, he is the controlling (and apparently the only) shareholder of the corporation and clearly has the means and obligation to cause the family settlement agreement to be honored. He cannot hide behind the corporate veil or under his trustee's cloak in order to avoid compliance with a clear and fair agreement, which he entered into knowingly and voluntarily. It is time that the respondent terminate the trust and make the distribution as mandated by the family settlement agreement.

For the foregoing reasons, the court entered its order of October 31, 2003, directing the respondent to transfer ownership of the building or buy out the petitioners' interests therein.